# ORIGINAL

## In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 08-570V
(To be published)

**FILED**

DEC 23 2014

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
DIANNA MATHIS, on                             *
behalf of S.D.C., a minor,                    *
                                              *
                Petitioner,                   *
                                              *
        v.                                    *
                                              *
SECRETARY OF HEALTH AND                       *
HUMAN SERVICES                                *
                                              *
                Respondent.                   *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Filed:  December 23, 2014

Autism; Decision on Attorneys'
Fees and Costs

*James W. Stanley, Little Rock, AR, for Petitioner.*
*Ryan D. Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION (ATTORNEYS' FEES AND COSTS)

In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"),[1] I issued a decision on January 18, 2013, dismissing this claim as untimely filed under the Vaccine Act's statute of limitations.  On March 26, 2013, petitioner filed a motion for attorneys' fees and costs in this matter.  Petitioner requested a total payment of $6,282.50, representing attorneys' fees of $6,187.50, and costs of $95.00.

Respondent objected, on the ground that no fees and costs should be awarded in cases adjudged to be time-barred.

The U.S. Supreme Court issued a decision on May 20, 2013, holding that a Vaccine Act petition that is found to be untimely *may* qualify for an award of attorneys' fees, if it was filed in good faith and there was a reasonable basis for the claim. *Sebelius v. Cloer*, 133 S.Ct. 1886, 1896-97 (2013).  After reviewing that decision, and the whole record of this case, I have determined that there was no reasonable basis for this petition, for reasons that will be set forth below in detail.  Therefore, I deny an award of fees and costs.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2006). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. § 300aa (2006).  I will also sometimes refer to the Act of Congress that created the Program as the "Vaccine Act."

1

# I

# PROCEDURAL HISTORY

## A. *Procedural history of the petition until its dismissal*

The petition filed in this case on August 12, 2008, alleged that S.D.C. developed an autism spectrum disorder ("ASD") as the direct and proximate result of the measles-mumps-rubella ("MMR") vaccination that S.D.C. had received in December, 2003. (Petition, ¶ 3.) The Petition included Petitioner's affidavit and two pages of medical records.[2] The case was assigned to Special Master Gary Golkiewicz. (ECF 3). Over the next six months, Petitioner filed additional medical records.[3] On February 10, 2009, Petitioner filed a "Statement of Completion" indicating (erroneously) that all of the relevant medical records had been filed.

On March 13, 2009, Respondent filed a Motion to Dismiss ("Resp. MTD"), arguing that Petitioner's claim was untimely filed under the Vaccine Act's statute of limitations. Petitioner filed a response on April 7, 2009, contending that that the claim was timely filed. (*See* Petitioner's Response to Respondent's Motion to Dismiss ("Response to MTD"), at 1-3.)

On April 10, 2009, petitioner filed a letter from Dr. Mary N. Megson addressed to petitioner's counsel, which noted that Dr. Megson was a treating physician who had examined and treated S.D.C. for his condition, beginning on May 15, 2006.[4] (*See* Medical Narrative from Dr. Megson.)[5] The Petitioner's expert report of Dr. Mary Megson was finally filed two years later, on February 28, 2011.

On September 27, 2010, an Order issued that required Petitioner to inform the Court whether she wished to proceed with her claim. In response, Petitioner submitted various records

---

[2] The affidavit and two pages of medical records will be treated as part of the petition and referred to by page number in the order in which they were received and filed.

[3] Petitioner filed medical records containing Exhibits 1-8 on November 10, 2008. On January 12, 2009, Petitioner filed medical records consisting of the same Exhibits 1-8 with the addition of Exhibits 9-11. When referencing Petitioner's medical records, I will cite to the January 12, 2009 filing.

[4] Dr. Mary Megson is said to have been a treating physician of S.D.C. However, Exhibit 1, which is identified as the "Reports and Records of Dr. Megson," contains only a narrative letter dated October 10, 2008, and addressed "To Whom It May Concern." (Ex. 1, pp. 1-2.) Thus, the office records of Dr. Megson's treatment of S.D.C. have *not* been filed.

[5] Petitioner filed Dr. Megson's letter, which is dated March 29, 2009, as Exhibit #1. Since Petitioner had already filed a different letter from Dr. Megson which is dated October 10, 2008, as Exhibit #1, I will refer to the March 29 letter by its title, Medical Narrative from Dr. Megson. Another narrative letter by Dr. Megson, dated January 9, 2009, and addressed to Petitioner's counsel, James Stanley, was filed as a "Supplemental Filing" on February 6, 2009. I will refer to this item as Supplemental Filing. On February 28, 2011, yet another letter from Dr. Megson, addressed to Petitioner's counsel, was filed as Petitioner's Expert Report, also labeled "Ex. 1." I will refer to this document as Petitioner's Expert Report.

and reports in support of her pending claim. (*See* Notice, Nov. 22, 2010, at 1; *see also* reports of Drs. Megson and Lonsdale, filed Feb. 28, 2011.)

Petitioner filed further pleadings concerning the Vaccine Act's statute of limitations on April 16, 2012, styled as "Suggestions of Additional Authorities" ("Pet. Suggestions"). Respondent filed a Response and Supplement to her Motion to Dismiss ("Resp. Suppl. Mot."), on May 1, 2012, which renewed Respondent's argument for dismissal, due to the untimely filing of the original Petition. This court ordered Petitioner to show cause why her claim should not be dismissed as untimely filed. (Order to Show Cause ("OSC"), July 24, 2012.) On August 28, 2012, Petitioner filed her Response ("Response to OSC"). In that Response, Petitioner argued that her untimely filing should be excused pursuant to the doctrine of equitable tolling.

This case was reassigned to my docket on September 27, 2012. Following a careful review of the entire record, I issued a Decision dismissing Petitioner's claim as untimely filed under the Vaccine Act's statute of limitations. *Mathis v. HHS*, No. 08-570V, 2014 WL 1275446 (Fed. Cl. Spec. Mstr. Jan. 18, 2013, refiled for publication Mar. 24, 2014.)

## B. *Procedural history of the pending claim for attorneys' fees and costs.*

During her unsuccessful attempt to obtain Program compensation for her son, Petitioner was represented by attorney James Stanley of Little Rock, Arkansas. Following dismissal of Petitioner's claim, Petitioner, through Mr. Stanley, filed an application for attorneys' fees and costs on March 26, 2013. On March 29, 2013, Respondent filed a Response, objecting to certain of the hours billed. In addition, Respondent also requested a deferral of the decision on Petitioner's fees application, until after resolution of a legal dispute concerning payment of attorneys' fees and costs in *untimely filed* Program cases, which was being litigated at that time in *Cloer II v. HHS*, 675 F.3d 1358 (Fed. Cir. 2012), *cert. granted, Sebelius v. Cloer,* No. 12-236, 133 S. Ct. 68 (Nov. 20, 2012.) On April 11, 2013, I filed an Order deferring resolution of Petitioner's application for attorneys' fees until the underlying legal issue was resolved in *Sebelius v. Cloer*.

On April 25, 2013, Petitioner and Respondent filed a Joint Status Report and Stipulation. In that document, Respondent again indicated that I should wait for the *Cloer* ruling, because the petition in this case had been dismissed as untimely filed. However, the parties agreed that *if* I were to conclude that an award was justified, then an appropriate *amount* of the award would be $5,095.

Then, on May 22, 2013, the Supreme Court issued its decision on the legal issue of whether, in a Program case, a petition found to be *untimely filed* may still qualify for an award of attorneys' fees and costs. *Sebelius v. Cloer*, 133 S. Ct. 1886 (2013). The court found that a petitioner *could* still be eligible for such an award of fees and costs, *if* the special master concluded that the petition was filed in good faith and that there was a reasonable basis for the claim, "*including whether there is a good-faith reason for the untimely filing.*" (*Id.* at 1896, emphasis added.)

The parties then addressed the issue of whether the Petitioner had a "reasonable basis" for filing the claim in this case. Petitioner filed a "memorandum brief" addressing that issue on December 2, 2013. Respondent filed a Response (hereinafter "Respondent's Response") on December 17, 2013.

## II

## FACTUAL HISTORY

Petitioner's child, S.D.C., was born on August 5, 2002. (Ex. 5 at 15.) On December 30, 2003, S.D.C. received multiple vaccinations, including the MMR vaccination that was at issue in this case. (*See* Pet. Response to MD, p. 5.)[6]

Petitioner did not submit medical records from S.D.C.'s pediatrician, but other treatment records from the Easter Seals Disability Services of Arkansas (Pet. Ex. 4) discuss the history of the onset of S.D.C.'s condition. These records indicate that

> Normal development occurred until 15-16 months of age, when a regression of skills was noted. [S.D.C.] was evaluated at Dennis Developmental Center on 3-21-05, at which time he met the DSM-IV diagnostic criteria for autism. [S.D.C.] attends *A Child's Place Preschool* where he receives direct speech language services three times per week.[7]

(Pet. Ex. 4, p. 18.) Thus, S.D.C. was developing normally until his skills began to regress during November and December of 2003, when he was 15 to 16 months of age.

The diagnosis of autism was confirmed by Dr. Megson on May 15, 2006, when she examined S.D.C. for the first time.[8] (*See e.g.,* Pet. Supp., pp. 2-3; Megson Letter, filed April 10, 2009, p. 1.) Dr. Megson provided treatment for S.D.C.'s condition thereafter. (*Id.*)

## III

## LEGAL STANDARD

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. § 300aa–15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis. (*Id.*)

---

[6] The vaccination record of S.D.C. was filed as an attachment to Petitioner's Response to MD, on April 7, 2009.

[7] It is notable that neither the evaluation by the Dennis Developmental Center nor the records of *A Child's Place Preschool* have been filed.

[8] Petitioner's Supplemental Filing, on February 6, 2009, presented a copy of a letter from Dr. Megson to Petitioner's counsel. In that letter, Dr. Megson stated that S.D.C.'s "language development was precocious to 9-12 months, but he lost it all after receiving 6 vaccines in a short period of time at 15 months." (Supplemental Filing, p. 3.) Dr. Megson places the time of onset of S.D.C.'s condition "at 15 months," which would be during or shortly after November 2003.

"The determination of the amount of reasonable attorneys' fees and costs is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the petitioner to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS*, 86 Fed. Cl. 201, 215 (Fed. Cl. 2009); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rupert v. HHS*, 52 Fed. Cl. 684, 686 (Fed. Cl. 2002); *Wilcox v. HHS*, No. 90–991 V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to costs as well as attorneys' fees. *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

There are two legal issues that are relevant to the request for attorneys' fees and costs in this case. The first issue concerns timeliness of filing of the petition. The second issue pertains to the legal standard for awarding attorneys' fees and costs when a petition is untimely filed.

## A. Timeliness

The Vaccine Act's statute of limitations states that for

> a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 300aa-16(a)(2) (emphasis added). Thus, to be timely, a petitioner must file a Program petition within 36 months of the presentation of the first symptom of an alleged vaccine-related injury. In *Cloer v. HHS*, 654 F.3d 1322 (Fed. Cir. 2011) (hereinafter, "*Cloer I*"). the Court of Appeals for the Federal Circuit affirmed that the "statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large." *Cloer I*, 654 F.3d at 1340. That date "does not depend on when a petitioner knew or reasonably should have known" about the injury. ( *Id.* at 1339.) Nor does it depend on the knowledge of a petitioner as to the cause of the injury. (*Id.* at 1338.)

Under *Cloer I*, "equitable tolling" of the statute of limitations may occasionally occur, but only in very limited "extraordinary circumstances," such as when a petitioner is the victim of fraud or duress, or when a procedurally deficient pleading was timely filed. *Id.* at 1344-45, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (noting that equitable tolling requires a litigant to have diligently pursued his rights, but that "some extraordinary circumstance stood in his way."); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)(noting that equitable tolling is to be used "sparingly" in federal cases and has been limited to cases involving deception or the timely filing of a procedurally defective pleading).

Equitable tolling may not apply simply because the statute of limitations deprives a petitioner of his or her claim. *Cloer I*, 654 F.3d at 1344. A petitioner's lack of knowledge of the law does not constitute an extraordinary circumstance permitting equitable tolling of a statute of

5

limitations. *See Cloer I*, 654 F.3d at 1344-45; *Maack v. HHS*, No. 12-354V, 2013 WL 4718924, at *5 (Fed. Cl. Spec. Mstr. Aug. 6, 2013). In *Cloer I*, the Federal Circuit Court of Appeals rejected application of equitable tolling when the petitioner did not discover a potential claim under the Vaccine Act until three years after receiving her medical diagnosis. (*Id.*)

In this case, in my Decision filed on January 18, 2013, I concluded that the petition in this case was clearly *not* timely filed, since the first symptoms of S.D.C.'s autism clearly preceded the filing of the Petition in this case by more than three years.

## B. *Attorneys' fees and costs for untimely filed petitions*

The statute provides:

In awarding compensation on a petition ... the special master or court shall also award as part of such compensation an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

§ 15(e)(1)(A) and (B). For purposes of awarding fees and costs, this language in the Vaccine Act creates three classes of litigants.

The first class consists of those petitioners who successfully establish vaccine causation of an injury. They are entitled to an award of reasonable attorneys' fees and costs as part of the compensation for their claim. (*Id.*)

Those who do not prevail on the merits of their petition, as in this *Mathis* case, fall into one of the other classes. The second class is comprised of those unsuccessful litigants who can demonstrate that their claims were brought in good faith and with a reasonable basis. They may, at the discretion of the special master, be awarded reasonable fees and costs. (*Id., see also Saxton*, 3 F.3d at 1520 ("If the petition for compensation is denied, the special master 'may' award reasonable fees and costs.... [T]he statute clearly gives [a special master] discretion over whether to make such an award.").)

The third class consists of those unsuccessful petitioners who are not able to establish that their claims were filed in good faith and had a reasonable basis. Petitioners who do not demonstrate such good faith and a reasonable basis may not be awarded attorneys' fees and costs.

In a subsequent opinion in the *Cloer* case, which considered the issue whether fees can be awarded in an *untimely filed* case, the U.S. Court of Appeals for the Federal Circuit opined that, "[a] petitioner who asserts an unsuccessful but non-frivolous limitations argument should be *eligible for a determination* of whether reasonable attorneys' fees and costs incurred in proceedings related to the petition should be awarded." *Cloer v. HHS*, 675 F.3d 1358, 1364 (Fed. Cir. 2012)(hereinafter "*Cloer II*")(emphasis added). The *Cloer II* court also discussed the standard for reaching such a determination of eligibility in untimely filed cases.

> The statutory language requiring a reasonable basis for the claim for which the petition was brought is broad enough to encompass the statute of limitations issue as well as the underlying merits of the claim. It is beyond dispute that Congress intended attorneys' fees to be awarded only in cases brought in good faith and where there was a reasonable basis for the claim underlying the petition, even where the petitioner does not prevail. The good faith and reasonable basis requirements apply to the claim for which the petition was brought; *this applies to the entire claim, including timeliness issues.*

*Cloer II*, 675 F.3d at 1362 (emphasis added).

The decision in *Cloer II* was appealed to the Supreme Court, and was upheld. In *Sebelius v. Cloer*, the Supreme Court agreed that attorneys' fees may be awarded even in untimely filed cases, if the petition was filed in good faith and had a reasonable basis. 131 S. Ct. 1886, 1896 (2013).

### 1. *Good faith*

Whether a petition was filed in good faith is a subjective inquiry. *Austin v. HHS*, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). It is satisfied if the Petitioner honestly believed that her child suffered a compensable vaccine injury. *Id.; Browning v. HHS*, No. 07-453V, 2010 WL 4359237, at *8 (Fed. Cl. Spec. Mstr. Sept. 27, 2010). Due to its subjective nature, the standard for good faith is easily satisfied. Generally, a petitioner is entitled to a presumption of good faith. *Grice v. HHS*, 36 Fed. Cl. 114, 121 (1996); *see also Heath v. HHS*, No. 08–85V, 2011 WL 4433646, at *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Hamrick v. HHS*, No. 99–683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); *Di Roma v. HHS*, No. 90–3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993); *Chronister v. HHS*, No. 89–41V, 1990 WL 293438, at *1 (Cl. Ct. Spec. Mstr. Dec. 4, 1990).

### 2. *Reasonable basis*

The Vaccine Act does not define "reasonable basis" explicitly. The reasonable basis requirement "is objective, looking not at the likelihood of success of a claim but more to the feasibility of the claim." *Turner v. HHS*, No. 99–544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

In *Perreira v. HHS*, 33 F.3d 1375 (Fed. Cir.1994), the Federal Circuit Court of Appeals contemplated the "reasonable basis" of a claim, and opined,

> Since the funds which are payable under this statute are limited, Congress must
> not have intended that every claimant, whether being compensated or not under
> the Vaccine Act, collect attorneys' fees and costs by merely having an expert state
> an unsupported opinion that the vaccine was the cause-in-fact of the injury. The
> words of the statute require more.

*Perreira*, 33 F.3d, at 1377.  Thus, the unsupported opinion of an expert regarding vaccine
causation is insufficient to establish a reasonable basis.  More is required.  "[U]nlike good faith,
there is no presumption of a petition's reasonable basis. The petitioner must affirmatively
establish a reasonable basis to recover attorneys' fees and costs."  *Id.; see also McKellar v. HHS,*
101 Fed. Cl. 297, 304 (2011).

**IV**

**HISTORY OF PETITIONER'S FAILURE TO PROVIDE DOCUMENTS OR
OTHER EVIDENCE OF A "REASONABLE BASIS" FOR FILING THIS PETITION**

**A.  *The Petition and medical records***

      As noted above, on August 12, 2008, Dianna Mathis filed the Petition in this case on
behalf of her son S.D.C., requesting compensation for an allegedly vaccine-related injury.  It was
a "short form" petition, which included only Petitioner's Exhibit A, an affidavit by Petitioner,
and Exhibit B, an insurance form and a single medical record dated June 2, 2006.  James Stanley
was identified as Petitioner's counsel in these documents, and his signature appears on the
Petition. (Petition, p. 3.)  The Petition that counsel prepared lacked appropriate documentation,
but was generally sufficient to initiate a claim, pending receipt of the relevant medical records.
*See Stewart v. HHS*, No. 02–819V, 2002 WL 31965743, at *4 (Fed. Cl. Spec. Mstr. Dec. 30,
2002).

      The Petition set forth general allegations concerning S.D.C.'s vaccinations that, if proved,
would justify an award of compensation under the Program.

> Petitioner's minor child has developed a neurodevelopmental disorder, consisting
> of an "Autism Spectrum Disorder" or similar dysfunction.  This disorder was
> proximately caused by a measles-mumps-rubella (MMR) vaccination given to
> Petitioner's son in December, 2003.

(Petition, at ¶3.)  This paragraph unmistakably identifies the MMR vaccination of December
2003 as the alleged cause of S.D.C.'s autism.

      On August 22, 2008, an Order issued that included instructions regarding which medical
records pertaining to S.D.C. were to be filed, and how to file those records.  Among the many
documents specified in that Order, Petitioner was directed to file "pre- and post-injury physician
or clinic records (including all relevant growth charts and test results), all post-injury inpatient
and outpatient records (including all provider notes, test results, and medication records)."  (*Id.,*
*p.* 2.)  Those records were to be organized and labelled according to the explicit instructions
provided.  (*Id.*, pp. 2-4.)  For further information on how documents should be submitted,

Petitioner was directed to this court's *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines*").[9]  It should be noted that the Order contained the following direct warning, in bold print: "Petitioner is hereby put on notice that filed records not complying with the filing requirements may be returned to petitioner with instructions to file correctly." (*Id.*, p. 2.)

Three days later, on August 25, 2008, Petitioner's counsel filed some of Petitioner's medical records.  However, it is clear that Petitioner's counsel did not review and comply with the instructions provided, since the documents that he filed were later returned to him, with instructions to re-file them properly. (*See* Order, Dec. 12, 2008; *see also* ECF docket entry #6, dated Aug. 25, 2008.) Respondent's Report ("Resp. Rep."), which was filed on September 23, 2008, objected that Petitioner's pleading "failed to state with particularity the circumstances surrounding the claim and was not accompanied by materials required to be filed with a petition for compensation under the Vaccine Act." (Resp. Rep., p. 1.)  Further, Respondent stated that Respondent had "contacted the petitioners, identifying these deficiencies and requesting that they be remedied." (*Id.*)

On October 20, 2008, Petitioner filed a Response acknowledging that Petitioner "admits that not all documents have been filed as of this date.  However, because of the time frames involved and the need to get the case filed in a timely manner not all information was available at the time of filing." (Pet. Response, filed Oct. 20, 2008, p. 1.)

On November 10, 2008, Petitioner filed Exhibits 1-8, which included some prenatal and birth records (Pet. Exs. 5,6,7), and certain medical records, but *none* of those records pertained to S.D.C.'s primary medical care between September 2002 and October 2006.  Since this time period encompassed the administration of much of S.D.C.'s childhood medical care, including the time period around the allegedly injurious vaccination in December of 2003, these records were *essential* to establishing Petitioner's claim.

On December 12, 2008, an Order issued directing Petitioner "to correctly re-file the medical records and a Statement Regarding Onset, by no later than January 12, 2009." (Order, Dec. 12, 2008.)  Petitioner was again directed to the Court's *Guidelines* for instructions regarding the content and organization of a complete petition. Finally, Petitioner was ordered to file a "Statement of Completion" upon the filing of all available medical records required under § 300aa-11(c)(2) of the Vaccine Act. (*Id.*)

On January 12, 2009, counsel re-filed the same Petitioner's Exhibits 1-8, along with Exhibits 9-11, which conformed to some of the court's instructions.  However, these newly-filed exhibits *still* did not include S.D.C.'s vaccination record, the medical records of S.D.C.'s first pediatrician, or any of the diagnostic and treatment records that are essential to identifying the characteristics of S.D.C.'s condition and the date when his symptoms first appeared.  It is also notable that this filing did not include the specifically-requested "Statement Regarding Onset." Thus, Petitioner's counsel did not comply with the court's order.

---

[9] *Guidelines for Practice Under the National Vaccine Injury Compensation Program,* accessible to the public on this Court's website at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

### B. *Onset of initial symptoms of S.D.C.'s condition*

Petitioner, on February 6, 2009, filed an item titled "Supplemental Filing" ("Pet. Supp."), which consisted of a letter dated January 9, 2009, addressed to Petitioner's counsel from Mary Megson, M.D., who was identified as a developmental pediatrician. Dr. Megson opined that S.D.C. exhibited features that would support a diagnosis of autism. The letter contained the following statement:

> [S.D.C.] is a now 6½ year old male that I saw initially at 3 years 9 months of age. At that time, he was noted to have poor pupillary constriction, suggestive of blocked acetylcholine. His language development was precocious to 9-12 months, but he lost it all after receiving 6 vaccines in a short period of time at 15 months.

(Pet. Supp., filed Feb. 6, 2009, p. 2.) This statement is significant for three reasons.

First, the statement acknowledged that Dr. Megson was S.D.C.'s treating pediatrician beginning at age 3 years 9 months; that is, about May 2006. However, Petitioner's counsel did *not* file Dr. Megson's contemporaneous medical records concerning S.D.C.'s diagnosis and treatment records that would be *highly relevant* to determining the time of onset of S.D.C.'s condition. Further, such records would also be essential to determining the merits of Petitioner's overall claim.

Second, Dr. Megson suggested that S.D.C.'s loss of language skills might be related to several vaccinations acting in combination, rather than a theory based entirely on the MMR vaccination, as advanced in the petition. Certainly, Petitioner had the right to modify her theory of the case, based on the opinion of her expert. In doing so, however, Petitioner would still be required to file the medical records that would support a new theory. Under the Vaccine Act, "merely having an expert state an unsupported opinion that the vaccine was the cause-in-fact of the injury" is insufficient to establish a reasonable basis for the claim that would justify payment of attorneys' fees and costs. *Perreira*, 33 F.3d at 1377.

Third, Dr. Megson's statement specifically noted that S.D.C. lost all of his previously acquired language skills when he was *15 months of age*, which would be during or shortly after November 2003.[10]

Dr. Megson's estimate of when symptoms of S.D.C.'s neurological problems first manifested was confirmed by records from the Easter Seals Disability Services of Arkansas ("Easter Seals"). (Pet. Ex. 4.) The Easter Seals 2007 Annual Review of S.D.C.'s treatment contained a retrospective history indicating that "Normal development occurred until 15-16 months of age, when a regression of skills was noted. [S.D.C.] was evaluated at Dennis

---

[10] There is an extensive description of the criteria for diagnosing autism, and the symptoms of that disorder, in my Decision of January 18, 2013. *See Mathis v. HHS*, No. 08-570, 2014 WL 1275446 (Fed. Cl. Spec. Mstr. Jan. 8, 2013, refiled for publication on March 24, 2014), at *3-6. Therefore I will not repeat that discussion here.

Developmental Center on 3-21-05, at which time he met the DSM-IV diagnostic criteria[11] for autism." (Pet. Ex. 4, p. 18.)  Thus, S.D.C. exhibited his first *symptoms* of autistic regression at 15 to 16 months of age; that is, sometime during November or December, 2003.  And, his first *diagnosis* of autism occurred no later than March 21, 2005, about eighteen months after he began exhibiting symptoms of the condition.  (Pet. Ex. 4, p. 18.)

The above notation (Pet. Ex. 4, p. 18) in the "Easter Seals" records shows that Petitioner's counsel, once again, had neglected to file specific highly relevant medical records; that is, the evaluation records from the Dennis Developmental Center, where S.D.C. was diagnosed with autism.

## C. *"Statement of Completion"*

On February 10, 2009, Petitioner filed a "Statement of Completion," signed by both Petitioner and Petitioner's counsel, indicating that S.D.C.'s medical records were "complete." (Statement of Completion, filed Feb. 10, 2009.)  However, at that time Petitioner had not even filed S.D.C.'s vaccination record to establish that S.D.C. had, in fact, received a vaccination covered by the Vaccine Act.  Nor had Petitioner filed any of the other medical records required by this Court's Order. (See Order, filed Aug. 22, 2008.)

Past decisions of this court make it clear that basic inquiries are required as part of the pre-filing case investigation that counsel is expected to conduct prior to the filing of any document under the Vaccine Act. *See Lamb v. HHS*, 24 Cl. Ct. 255, 258–259 (1991) (quoting the requirement of Rule 11 of the Rules of the Court of Federal Claims (RCFC) that counsel certify that a filed pleading is based on "knowledge, information, and belief formed after reasonable inquiry, ... is well grounded in fact and is warranted by existing law"); *Di Roma*, 1993 WL 496981 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) at *1 ("[B]asic inquiries are required prior to the filing of any paper under the Act.").  A reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim or the medical support for a vaccine petition. *See Turner v. HHS*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

On February 10, 2009, when the Statement of Completion was filed, counsel had already been allowed six months, even after the Petition was filed, to research the Vaccine Act and verify the facts of the case, but he had still not filed S.D.C.'s vaccination record, a required document. Nor had Petitioner complied with this court's order to file "pre- and post-injury physician or clinic records (including all relevant growth charts and test results), all post-injury inpatient and outpatient records (including all provider notes, test results, and medication records)." (Order, Aug. 22, 2008, p. 2, *citing* § 300aa–11(c)(2).   In short, the medical record was *not* complete.

## D. *Petitioner's Response to Respondent's Motion to Dismiss*

Respondent filed a Motion to Dismiss this case ("Resp. MTD"), on March 13, 2009, based on the untimely filing of the original Petition.  That Motion noted that Petitioner had not

---

[11] DSM-IV refers to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994).  The DSM-IV diagnostic classification of autistic disorder is located at 299.00.

filed S.D.C.'s vaccination record or the medical records of his primary care providers--in particular, the evaluation from the Dennis Developmental Center. (Resp. MTD, p. 3.)   Despite these deficiencies, Respondent contended that the untimely filing of this Petition could still be determined based only on the records already filed. (*Id.*)

Petitioner's counsel filed a Response to Respondent's Motion to Dismiss ("Response to MTD"), on April 7, 2009.  One part of this document is particularly noteworthy.

> There is an obvious confusion over certain aspects of the timeline of the filing of this by the Respondent. The Respondent has contended that [S.D.C.] had a regression of his speech development at 15 months of age as, noted by records in November 2003. This is correct. However, it is also <u>irrelevant</u>. This could not, *per force*, have been a sign and symptom of any impact or resulting use of the vaccine for Measles, Mumps, and Rubella because [S.D.C.] did not receive those vaccines until December 30, 2003 (enclosed is a copy of [S.D.C.'s] vaccine record – Exhibit A).

(Response to MTD, pp. 1-2, original emphasis.)  This quoted section appears to be nothing less than, in effect, an inadvertent concession that S.D.C.'s MMR vaccination was not, in fact, the cause of his autism, as Petitioner had alleged in the Petition, since S.D.C. was *already* showing symptoms of autism *prior* to the vaccination in question.

So, clearly, according to the facts *conceded* by Petitioner's counsel, the MMR administered to S.D.C. on December 30, 2003, could not have caused the regression that had already manifested in November 2003.

Another aspect of Petitioner's Response is also important.  Attached to this document was the Vaccination Record of S.D.C., an essential document under the Vaccine Act that should have been filed with the Petition, which Petitioner's counsel finally filed, to support his most recent brief.[12]  It does, in fact, record the MMR vaccination administered on December 30, 2003, along with all the other vaccines administered to S.D.C. on that day and throughout the first 16 months of his life. Clearly, considering the many dates and entries recorded in this document, S.D.C. received regular pediatric care during his infancy. I note that the source of this document, and the source of the care delivered, was the Arkansas Pediatric Clinic, in Little Rock, Arkansas. (Vaccination Record, filed April 7, 2009.)  I find it surprising that Petitioner's counsel filed this solitary copy of a document from the Arkansas Pediatric Clinic, *and nothing else*. Where were the rest of S.D.C.'s pediatric records from the Arkansas Pediatric Clinic or any other source of pediatric care during S.D.C's early life?  Were those records never sought by counsel?  Or, were they actually obtained, but never filed?  Unfortunately, this will remain unclear.

---

[12] The vaccination record of S.D.C. was filed on April 7, 2009, as Petitioner's Exhibit A, an attachment to Petitioner's Response to Respondent's Motion to Dismiss.  Petitioner previously filed a different "Exhibit A," so I will refer to this item as "Vaccination Record, filed April 7, 2009."

### E. Concession of untimeliness and request for "Equitable Tolling"

On April 10, 2009, Petitioner filed another letter from Dr. Megson, in which she describes S.D.C.'s alleged adverse reaction after the multiple vaccinations he received on December 30, 2003. (Letter of Dr. Megson, filed April. 10, 2009.) She discusses a theory of causation based on multiple vaccinations, including the MMR plus various vaccines that contained the preservative thimerosal, which is derived from mercury. (*Id.*)

On November 22, 2010, Petitioner filed the Medical Narrative of Dr. Derrick Lonsdale ("Lonsdale Narrative"), in the form of a letter addressed to Dr. Megson. Dr. Lonsdale's letter discussed the utility of various laboratory tests that could be performed on S.D.C.. I note that Dr. Lonsdale mentioned that Dr. Megson and Dr. Stephen Kahler had worked very hard on behalf of S.D.C. (Lonsdale Narrative, filed Nov. 22, 2010.) An addendum to the letter notes that a copy was sent to Dr. Stephen Kahler, at the Arkansas Children's Hospital in Little Rock, Arkansas. Thus, it appears that Dr. Stephen Kahler also was directly involved in S.D.C.'s medical care, when S.D.C. lived in Arkansas. So, once again, it is unclear why the medical records of *Dr. Kahler* were not filed in this case.

Petitioner filed documents identified as expert reports from Dr. Lonsdale and Dr. Megson, on February 28, 2011.[13] Dr. Megson stated that "I definitely relate [S.D.C.'s] regression and onset of bowel disease to a rapid deterioration after getting MMR and Dtap on the same day." (Megson Expert Report, filed Feb. 28, 2011, p. 1.) Dr. Lonsdale opined that "this child's autism is clearly related to the 'stress' of the multiple vaccinations." (Lonsdale Expert Report, filed Feb. 28, 2011, p. 2.) But, since the medical records of neither Dr. Megson nor Dr. Lonsdale were filed, these statements constitute "unsupported" medical opinions. Also, it appears that these experts were unaware that Petitioner had already filed an acknowledgment that the vaccinations administered to S.D.C. on December 30, 2003, could *not* have caused the "regression of his speech development at 15 months." (Response to MTD, filed April 7, 2009, pp. 1-2.)

## V

## THE DECISION DISMISSING THIS CASE AS UNTIMELY FILED

Soon after this case was reassigned to my docket on September 27, 2012, I issued a Decision in this case, *Mathis v. HHS*, No. 08-570V, 2014 WL 1275446 (Fed. Cl. Spec. Mstr. Jan. 18, 2013, reissued for publication on March 24, 2014), ruling that the Petition was untimely filed. Therefore, the case was dismissed. That opinion elaborated the reasoning in support of the dismissal, in detail, so it is appropriate to quote it here, at length.

[P]etitioner has *conceded* that this claim was untimely filed, stating that "the court [ ] correctly determined that [S.D.C.] was diagnosed with autism spectrum

---

[13] I note that these two expert reports are misidentified as Petitioner's Exhibit 1 and Exhibit 2. Since those exhibit numbers had already been used for other documents, I will refer to these reports as "Lonsdale Expert Report" and "Megson Expert Report."

[disorder] on March 21, 2005. Therefore, to be timely [filed] his vaccine claim had to [have] been filed, not later than March 20, 2008." Pet. Resp. to SC Order at 1. However, petitioner goes on to argue that equitable tolling should be applied in this case. *Id*. at 2. Petitioner avers that she received incorrect advice from an attorney, Ramon Rodriguez, who spoke to her by phone on March 12, 2008, and sent her a letter reiterating his belief "that the statute of limitations has already run "in this claim. Letter from Ramon Rodriguez dated March 13, 2008, (attached to Pet. Resp. to SC Order) at 1. Thus petitioner asserts that "but for the improper advice given [to] her by Mr. Rodriguez" she "would have been able to prosecute her vaccine claim within the required" statute of limitations. Pet. Resp. to SC Order at 2. Petitioner is mistaken.

It is the occurrence of the *first symptom or manifestation* of [S.D.C.'s] autism, not [his] diagnosis, which starts the running of the Vaccine Act's statute of limitations. I find that [S.D.C.'s] first symptom of autism occurred in November or December of 2003 when he experienced a regression in his speech development at 15-16 months of age. Pet. Ex. 4 at 18, *see also* Pet. Resp. to MD at 1. Thus, to have been timely filed petitioner must have filed her claim prior to December 2006. Instead petitioner filed her petition on August 12, 2008, more than 19 months too late. Thus, Mr. Rodriguez did not give petitioner erroneous advice regarding the statute of limitations when he spoke to petitioner on March 13, 2008. Even if petitioner [had] filed her petition on March 13, 2008, the petition would have been untimely filed. Accordingly, even if it were appropriate to apply the doctrine of equitable tolling to the instant claim it would not save the claim [from] dismissal as untimely filed.

*Mathis*, 2014 WL 1275446 at *8 (footnote deleted).

Judgment on the Decision was entered on February 22, 2013.

# VI

## APPLYING THE LEGAL STANDARD TO THIS CASE

### A. *The applicable law*

As explained above, the Court of Appeals for the Federal Circuit has opined that "[a] petitioner who asserts an unsuccessful but non-frivolous limitations argument should be eligible for a determination of whether reasonable attorneys' fees and costs incurred in proceedings related to the petition should be awarded." *Cloer v. HHS*, 675 F.3d 1358, 1364 (Fed.Cir. 2012) (*Cloer II*). Thus, under *Cloer II* a petitioner who files a petition that is unsuccessful due to untimely filing is eligible for a determination concerning attorneys' fees and costs only if a certain condition is satisfied. That condition is that petitioner must have advanced an "unsuccessful but non-frivolous limitations argument" in support of the claim that the petition was timely filed. (*Id.*)

Thereafter, the decision in *Cloer II* was appealed to the U.S. Supreme Court. That Court, in *Sebelius v. Cloer*, affirmed *Cloer II*'s holding that a "petition found to be untimely *may*

qualify for an award of attorneys' fees. *Sebelius v. Cloer*, 131 S. Ct. at 1074 (emphasis added). (The word "may" is emphasized here, to illustrate that an award is permitted, but it must be based on a determination that the Petition was "filed in good faith and there is a reasonable basis for its claim." (*Id.*))  The Supreme Court noted that that "[a]ttorney's fees are provided, not only for successful cases, but even for unsuccessful claims that are not frivolous." (*Id.*, at 1891.)

Further, according to the Supreme Court in *Sebelius v. Cloer*, special masters are responsible for identifying untimely claims that are "frivolous" or "specious" and thus, are not eligible for an award of attorneys' fees and costs.  To do so, according to the Supreme Court, the special master must "determine if a reasonable basis exists for the petitioner's claim, including whether there is a good-faith reason for the untimely filing." (*Id.*, at 1896.)

To be sure, the phrase quoted in the prior sentence may be viewed as somewhat ambiguous.  The phrase confirms that there must be a *reasonable basis overall* for the filing of the claim, "*including*" a "good faith reason" for the untimely filing.  Does this quoted phrase mean that the special master, concerning *specifically* the "timely filing" aspect of the case, must find a "reasonable basis" for the argument that the petition was *timely filed*, or only a "good faith" assertion that the petition was timely filed?

I am persuaded that when *Sebelius v. Cloer* is viewed *as a whole*, the Supreme Court was requiring a "reasonable basis" for the argument that the petition was timely filed.  First, the entire phrase quoted two paragraphs above clearly states that the special master must find a "reasonable basis" for the claim *overall*, "including" the reason for the untimely filing.  Second, the Supreme Court in *Sebelius v. Cloer* was *affirming* the *Cloer II* ruling, which specifically stated that to gain a fees award for an untimely-filed petition, the petitioner must advance a "non-frivolous *limitations* argument." (675 F.3d at 1364, emphasis added.)  It would appear to me that the Supreme Court was adopting the requirement that the petition must have a "non-frivolous *limitations* argument," which in effect amounts to an argument with a *reasonable basis*, not merely a "good faith" assertion.[14]

Moreover, the same interpretation of *Sebelius v. Cloer*, which I have reached here concerning this point, seems to have been adopted by a judge of this Court in *Scanlon v. HHS*, 116 Fed. Cl. 629, 634 (2014).  There the judge concluded that the Supreme Court, in *Sebelius v. Cloer*, held that an untimely-filed petition may still be eligible for an award of fees and costs "if the petitioners *reasonably* believed" that the petition was timely filed. (*Id.* at 634, emphasis added.)  Thus, the judge in *Scanlon*, as I do here, interpreted *Sebelius v. Cloer* as requiring a *reasonable* timeliness argument, not merely a good-faith timeliness argument.

Therefore, as I interpret the law, the U.S. Court of Appeals for the Federal Circuit in *Cloer II,* and the U.S. Supreme Court in *Sebelius v. Cloer*, together specify the conditions that must be satisfied when there is an application for attorneys' fees and costs in a case that was untimely filed.  A) Petitioner must have filed the claim in good faith; B) Petitioner's overall

---

[14] Even if I am *not* correct concerning the *legal* issue of whether a petitioner's *timeliness argument* must have a "reasonable basis", as opposed to merely being supported by a "good faith" belief, the result of this fees application would be no different.  As explained at pp. ___, I also conclude that there was no reasonable basis to even *file or pursue the claim*, when counsel never did produce any *medical records* that offered any support to Petitioner's causation claim.

claim must have a "reasonable basis"; C) Petitioner's *limitations argument* must not be "frivolous," and, therefore, must have a "reasonable basis."

### A. Whether the claim was filed in good faith.

Whether a petition was filed in good faith is a subjective inquiry. *Austin v. HHS*, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). That inquiry would be satisfied if the Petitioner honestly believed that her child suffered a compensable vaccine injury. *See Id.; Browning v. HHS*, No. 07-453V, 2010 WL 4359237, at *8 (Fed. Cl. Spec. Mstr. Sept. 27, 2010). Generally, a petitioner is entitled to a presumption of good faith, "in the absence of direct evidence of bad faith, the special master [is] justified in presuming good faith." *Grice v. HHS*, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996). There is no evidence in the record that would negate the presumption of Petitioner's good faith in filing this claim. Further, Respondent does not contest that this petition was filed in good faith. (*See* Respondent's Response, filed Dec. 17, 2013, p. 3.)

### B. Whether a reasonable basis existed for Petitioner's claim

In the history of the Program, special masters have been "quite generous in finding a reasonable basis for petitioners" in granting fee awards in unsuccessful cases, but they are much less generous when it is evident that counsel failed to investigate sufficiently the facts underlying the claim. *Riley v. HHS*, No. 09–276V, 2011 WL 2036976, at *3 (Fed. Cl. Spec. Mstr. Apr. 29, 2011); *see also Murphy v. HHS*, 30 Fed. Cl. 60, 62 (1993) (affirming denial of attorneys' fees where contemporaneous records provided no basis for alleged injury), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995); *Di Roma*, 1993 WL 496981, at *3 (denying attorneys' fees and costs where "[m]inimal research and good sense should have indicated that th[e] case had no basis under the law"); *cf. Turner*, 2007 WL 4410030, at *10 (finding a reasonable basis when, after filing a skeletal petition, counsel promptly investigated the case, and "counsel [did] not unduly prolong [ ] the proceeding but [ ] moved promptly for judgment on the record" after being unable to find an expert).

The Vaccine Act requires a petitioner to file, concurrent with the filing of the petition, the "vaccination records associated with the vaccine allegedly causing the injury, pre-and post-injury physician or clinic records (including all relevant growth charts and test results), all post-injury inpatient and outpatient records (including all provider notes, test results, and medication records), if applicable, a death certificate, and if applicable, autopsy results." 42 U.S.C. § 300aa–11(c)(2). The Court generally accepts skeletal petitions that do not include all of the records required by the Vaccine Act. *See Stewart v. HHS*, No. 02–819V, 2002 WL 31965743, at *4 (Fed. Cl. Spec. Mstr. Dec. 30, 2002); *see also Robles v. HHS*, 155 F.3d 566, 1998 WL 228174 (Fed. Cir. 1998) (unpublished). Yet, while such an incomplete filing suffices to stop the running of the statute of limitations, it does not by itself establish a "reasonable basis" within the meaning of the statute. Eventually, a petitioner *must* file the records that support a claim, as required by the Vaccine Act. *See, e.g., Brown v. HHS*, No. 99–539V, 2005 WL 1026713 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (no reasonable basis where petitioner presented only emails between petitioner and the law firm); *Turpin v. HHS*, No. 99–564V, 2005 WL 1026714 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (no reasonable basis where only one affidavit and no medical records were submitted); *Di Roma v. HHS*, No. 90–3277V, 1993 WL 496981 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (denying attorneys' fees where petitioner could not prove receipt of a covered vaccine).

Usually, petitioners are permitted to supplement an insufficient petition after it is filed. While it is reasonable to allow petitioners to supplement their petitions in order to satisfy the statutory requirements, "it is also reasonable to put on them the risk of not being compensated for attorneys' fees and costs if they file a petition without the necessary supporting documentation *and are later unable to produce such documentation*." *Spagiare v. HHS*, No. 90–468V, 1991 WL 146284, at *2 (Fed. Cl. Spec. Mstr. July 17, 1991)(emphasis added). A claim does not have a reasonable basis when a petitioner, after having an opportunity to submit evidence, produces neither the necessary medical records nor an expert report that is legally sufficient to support causation. *Perreira*, 33 F.3d at 1377.

When all of the documentation required by the Vaccine Act has been filed, reasonable basis still cannot be established if the *medical records* do not support the claims made in the petition. See, *e.g., Murphy*, 30 Fed. Cl., at 61 (affirming special master's finding of no reasonable basis when the medical and other written records contradicted the claims in the petition); *Stevens v. HHS*, No. 90-221V, 1992 WL 159520, at *3-*4 (Cl. Ct. Spec. Mstr. June 9, 1992 (denying fees when counsel relied on a medical expert's opinion that had "no plausible factual support" and counsel failed to adequately investigate the facts); *Collins v. HHS*, No. 91–821V, 1992 WL 164512 (Cl. Ct. Spec. Mstr. June 23, 1992) (denying fees when the injuries alleged in the petition were not supported by medical records or expert opinion).

Based on an ongoing investigation of the facts of a case, counsel should be able to determine when a case lacks the necessary evidentiary support, and "rather than waste the court's time and efforts, an attorney should use reasoned judgment in determining whether to ... pursue a claim." *Murphy v. HHS*, 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). In short, counsel has a "duty to the court to avoid frivolous litigation." *Perreira*, 33 F.3d at 1377.

In this case, Petitioner made allegations in the Petition filed on August 12, 2008, which were not supported by any medical records filed at that time. During the course of this litigation, it has become apparent that a body of records concerning S.D.C.'s condition actually do exist, but have not been filed into the record of this case, despite multiple court orders to do so. Furthermore, the limited evidence that was filed made it *completely clear* that the case was *untimely filed*, yet Petitioner's counsel continued to pursue the case. In *Perreira*, the Federal Circuit Court of Appeals contemplated the "reasonable basis" of a claim, and opined that the Vaccine Act does not authorize an award of "attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury. The words of the statute require more." *Perreira*, 33 F.3d at 1377.

This claim did not have a reasonable basis at the time of filing, and the subsequent materials filed have not provided a reasonable basis.

### D. *Whether Petitioner's limitations argument is "frivolous" and without a "reasonable basis"*

According to the Federal Circuit, frivolous claims include "spurious and specious arguments" and "distortion and disregard of the record and opposing authorities." *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068 (Fed. Cir.1987); *see also Galloway Farms v. U.S.*, 834 F.2d 998, 1000-01, 1005 (Fed. Cir. 1987)(finding all of appellants' claims specious and frivolous). In court proceedings, "frivolity does not imply levity, and is not inconsistent with a

litigant's belief that he has been wronged and ought to have a remedy." *Galloway Farms*, 834 F.2d at 1001.

Other circuits have defined frivolous claims or appeals as those which involve "legal points not arguable on their merits"--*Caldwell v. Palmetto State Savings Bank of S.C.,* 811 F.2d 916, 919 (5th Cir.1987); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1161 (5th Cir. 1985); *Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir. 1985)--or those whose disposition is obvious. *Reliance Insurance Co. v. Sweeney Corporation,* 792 F.2d 1137, 1138 (D.C. Cir. 1986); *Gattuso v. Pecorella*, 733 F.2d 709, 710 (9th Cir. 1984); *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 74 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S. Ct. 433, 83 L. Ed. 2d 359 (1984).

In this case, Petitioner initially presented a limitations argument that "Petitioner endeavored to file her claim timely but was thwarted in doing so because of misinformation given her as well as her concern over whether she had to wait until after her son was first diagnosed with autism spectrum related to MMR vaccine." (Pet. Suggestions, filed April 16, 2012, ¶ 4.) That argument was renewed in Petitioner's Response to Order to Show Cause, claiming that "[e]quitable tolling is applicable in this case because Petitioner *but for* the improper advice given her by Mr. Rodriguez, would have been able to prosecute her claim within the required 36 months." (Pet. Resp. to Order to SC, filed August 28, 2012, ¶5.)

On January 18, 2013, I issued a Decision dismissing this case due to untimely filing of the petition. That decision stated:

> Mr. Rodriguez did not give petitioner erroneous advice regarding the statute of limitations when he spoke to petitioner on March 13, 2008. Even if petitioner [had] filed her petition on March 13, 2008, the petition would have been untimely filed. Accordingly, even if it were appropriate to apply the doctrine of equitable tolling to the instant claim it would not save the claim [from] dismissal as untimely filed.

*Mathis*, 2014 WL 1275446, at *8.

On November 15, 2013, I issued an Order instructing the parties to file briefs addressing whether there was a reasonable basis for this claim. On December 2, 2013, Petitioner filed a "Memorandum Brief," which re-stated her equitable relief argument as follows: "Petitioner had reason to believe the claim was timely because she had received advice from another attorney (concerning the filing of the ASD claim) she has contended misled her and caused her not to file her son's claim timely." (Pet. Brief, filed Dec. 2, 2013, pp. 2-3.) Thus, even after the Decision of January 18, 2013, in which I specifically *rejected* the argument that Mr. Rodriguez had given Petitioner incorrect advice, Petitioner continued to contend that it was *Mr. Rodriguez' advice* that caused her to file an untimely claim.

This argument has no validity. It falls squarely within the category of "frivolous;" that is, a "spurious and specious" argument based on "distortion and disregard of the record." *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068 (Fed. Cir. 1987).

18

## VII

## CONCLUSION

Petitioner has requested compensation for the efforts of Petitioner's counsel in this unsuccessful case. But Petitioner would become eligible for an award of attorneys' fees and costs only upon showing that "there was a reasonable basis for the claim for which the petition was brought." 42 U.S,C. § 300aa-15(e). Here, the evidence demonstrates both that Petitioner did not have a reasonable basis for the claim, nor was there a defensible reason for the *untimely filing* of the claim. Thus, her application for attorneys' fees and costs is **DENIED.**

In the absence of a timely-filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.[15]

**IT IS SO ORDERED**

George L. Hastings, Jr.
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing the right to seek review.

19